IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**CLIFTON L. SPARKS,**

    Plaintiff,

v.                                                                          Civil Action No. **3:17CV242**

**L. AVA LEVIN,**

    Defendant.

## MEMORANDUM OPINION

Clifton L. Sparks, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action[1] in which he alleges that Defendant L. Ava Levin violated his Eighth Amendment rights.[2] This matter is before the Court on Defendant Levin's Motion for Summary Judgment. (ECF No. 25.) Defendant Levin provided Sparks with the appropriate *Roseboro*[3] notice for the Motion for Summary Judgment. (ECF No. 27) Nevertheless, Sparks has not filed a response in opposition. For the reasons stated below, Defendant Levin's Motion for Summary Judgment will be GRANTED.

---

[1] The statute provides, in pertinent part:

    Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[3] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

## I. SUMMARY OF ALLEGATIONS

In his Complaint filed on March 29, 2017,[4] Sparks alleges the following:

> Plaintiff is an older person who has sugar diabetes, and other medical ailments. These ailments require immediate care. Defendant Levin knew that Plaintiff needs medical care due to the chronic pain that Plaintiff suffers from each and every day.
> Once Plaintiff was sent to Haynesville, he lodged sick-call slips, so that he could be seen by the medical department. However, it took a long time to walk to medical because of the pain and because Plaintiff has to use a cane. Plaintiff was finally seen by the Defendant, Doctor Levin. Each time Plaintiff would see him, Plaintiff would complain about pain, and how [his] shoes hurt his feet when walking. Defendant prescribed medication, however, the medication did not help, the nerve pain just got worse.
> On or about February 6, 2017, the Defendant Mr. Levin had Plaintiff out to the hospital, VCU in Richmond. However, once at VCU, Plaintiff was seen by the doctor. Once all testing and examinations were complete, the outside doctor at VCU ordered that the Plaintiff receive [Naprosyn] for his pain. Most of Plaintiff's pain, comes from his lower back by way of his lower disc, and due to diabetic nerve pain in the bottom if his feet.
> Respectfully, from that date, Plaintiff has not received any pain medication that would help including Defendant did not order the [Naprosyn] that was prescribed by the outside doctor from VCU. Plaintiff has explained that the pain is and was getting worse, but Defendant has not and will not order the right pain medication.

(Compl. 3–4.) The Court construes Sparks to raise the following claim for relief against Defendant Levin:

Claim One: Defendant Levin was deliberately indifferent to Sparks's pain by failing to provide Sparks with the pain medication prescribed by an outside doctor.

Sparks seeks an unspecified amount of damages. (*Id.* at 5.)

---

[4] Sparks's Complaint is comprised of what appears to be two separate documents. The first document is a numbered list of background information and allegations. (ECF No. 1, at 1–2.) The second document contains the title, "Complaint," followed by a narrative section detailing his claim and requesting relief. (*Id.* at 3–5.) The Court considers the allegations from both of these documents. The Court employs the pagination assigned to the Complaint by the CM/ECF docketing system. The Court corrects the punctuation, spelling, and capitalization and omits the emphasis in quotations from the Complaint.

2

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)). In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere "*scintilla* of evidence" will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party ... upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to

summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)).

In support of his Motion for Summary Judgment, Defendant Levin has submitted: (1) his own declaration (Mem. Supp. Mot. Summ. J. Ex. 1 ("Levin Decl."), ECF No. 26–1), and (2) copies of Sparks's medical records ("Medical Records," *id.* Ex. A, ECF Nos. 26–2 through 26–3).

At this stage, the Court is tasked with assessing whether Sparks "has proffered sufficient proof, in the form of *admissible* evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added). As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. Sparks failed to respond to the Motion for Summary Judgment, thereby failing to cite to any evidence that he wishes the Court to consider in opposition. *See* Fed. R. Civ. P. 56(c)(3) (emphasizing that "[t]he court need consider only the cited materials" in deciding a motion for summary judgment). Sparks's complete failure to present any evidence to counter Defendants' Motion for Summary Judgment permits the Court to rely solely on Defendants' submissions in deciding the Motion for Summary Judgment. *See Forsyth*, 19 F.3d at 1537; Fed. R. Civ. P. 56(c)(3) ("The Court need only consider the cited materials . . . .").[5]

Nevertheless, Sparks swore to the contents of his Complaint, making the allegations contained therein "the equivalent of an opposing affidavit for summary judgment purposes."

---

[5] On May 25, 2018, the Court received a letter from Sparks with attached medical records from 2017. (ECF No. 34.) However, "[i]t is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment." *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993) (citation omitted). "For documents to be considered, they 'must be authenticated by and attached to an affidavit' that meets the strictures of Rule 56." *Campbell v. Verizon Va., Inc.*, 812 F. Supp. 2d 748, 750 (E.D. Va. 2011) (quoting *Orsi*, 999 F.2d at 92). Sparks's medical records run afoul of these rules and will not be considered.

*World Fuel Servs. Trading, DMCC v. Hebei Prince Shipping Co.*, 783 F.3d 507, 516 (4th Cir. 2015) (internal quotation marks omitted) (citation omitted).

In light of the foregoing principles and submissions, the following facts are established for the purposes of the Motion for Summary Judgment. All permissible inferences are drawn in favor of Sparks.

### III. SUMMARY OF UNDISPUTED FACTS

Sparks is incarcerated in Haynesville Correctional Center where Defendant Levin is employed as a physician. (Levin Decl. ¶¶ 1, 4.) Sparks "has diabetes mellitus with resulting neuropathy as well as [a] prior history of back surgery and degenerative disc disease." (*Id.* ¶ 4.)[6] On October 14, 2016, Defendant Levin saw Sparks who requested a cane for his gait difficulties. (*Id.* ¶ 5.) Defendant Levin ordered Sparks a cane and ordered a follow-up visit with an orthopedist at Virginia Commonwealth University Health Systems ("VCU"). (*Id.*) On October 17, 2016, Sparks was seen in sick call with complaints of lesions on his lower legs and was referred to Defendant Levin for treatment. (*Id.* ¶ 6.) The same day, Defendant Levin observed Sparks's legs, noted that his lesions were healing and that there was no sign of infection. (*Id.*) Defendant Levin ordered dressing changes and the application of ointment for his wound care and directed Sparks to return in three weeks for a follow-up appointment. (*Id.*) On October 19, 2016, the medical department sent the request for an orthopedic appointment to VCU and on October 21, 2016, the medical department received confirmation that Sparks was scheduled for an appointment with the orthopedist on February 6, 2017. (*Id.*)

During sick call on October 31, 2016, Sparks presented with complaints of pain in both of his feet from his new boots. (*Id.* ¶ 7.) Sparks was referred to Defendant Levin for an

---

[6] The Court omits the citations to the Medical Record in the citations to Dr. Levin's Declaration.

evaluation. (*Id.*) On November 1, 2016, Defendant Levin ordered that Sparks be provided with proper fitting boots or shoes. (*Id.*) That same day, Defendant Levin saw Sparks, informed him that he had requested shoes for him, noted that Sparks was already on medicine that should address his diabetic neuropathy, and directed Sparks to elevate his legs when he was not at work. (*Id.*) Defendant Levin instructed Sparks to follow up with the nurse in one week. (*Id.*)

On November 9, 2016, medical issued Sparks a wooden cane to help with ambulation. (*Id.* ¶ 8.) On November 14, 2016, Defendant Levin saw Sparks for a follow up for his leg wound which was healing. (*Id.*)

On January 6, 2017, Defendant Levin saw Sparks in the Chronic Disease Clinic and referred Sparks to a neurosurgeon for his chronic lumbar pain. (*Id.*) Defendant Levin also noted that Sparks was assigned to a bottom bunk. (*Id.*)

On January 20, 2017, Sparks requested to see the doctor because of increased back pain. (*Id.* ¶ 9.) Defendant Levin noted that Sparks wore a back brace and was using the cane for ambulation and reported numbness in his legs. (*Id.*) Defendant Levin noted that Sparks had an orthopedic appointment scheduled and discussed with Sparks the need to possibly start additional medications for his chronic back pain. (*Id.*)

On January 25, 2017, Sparks walked to medical and reported that he was unable to walk to school and had numbness in his feet. (*Id.* ¶ 10.) Sparks informed Defendant Levin that attending school and sitting for extended periods of time caused him more back pain. (*Id.*) Defendant Levin directed Sparks to use a cushion or a folded blanket in his chair to alleviate pain. (*Id.*)

On January 30, 2017,[7] Sparks had an outside appointment with an orthopedic specialist at VCU for evaluation of his back pain. (*Id.* ¶ 11.) The orthopedist confirmed that Sparks had foraminal stenosis without nerve impingement. (*Id.*) The orthopedist prescribed a non-steroidal anti-inflammatory medication and physical therapy and directed Sparks to follow up at the clinic in six months. (*Id.*)

On January 31, 2017, Defendant Levin saw Sparks for a follow-up after his orthopedic appointment. (*Id.* ¶ 12.) Defendant Levin noted that the orthopedist had recommended Naprosyn and physical therapy for Sparks's osteoarthritis and degenerative disc disease. (*Id.*) Defendant Levin ordered that Sparks receive Naprosyn and submitted a consultation request for Sparks to begin physical therapy. (*Id.*)

On February 20, 2017, Sparks began physical therapy which he completed on March 16, 2017. (*Id.* ¶ 13.) Also on March 16, 2017, Sparks filed the instant Complaint in this Court alleging that he was denied the prescribed pain medicine, Naprosyn, by Defendant Levin. (Compl. 5.)

During sick call on April 3, 2017, Sparks requested that he be issued a tutor instead of attending class because sitting was causing him increased discomfort. (Levin Decl. ¶ 13.) During this appointment, Sparks reported for the first time that he had not received the Naprosyn ordered by Defendant Levin. (*Id.*)

Sparks was scheduled to see Defendant Levin on April 4, 2017. (*Id.* ¶ 14.) During the appointment, Defendant Levin noted that Sparks had been authorized to carry a pillow to class

---

[7] Sparks identifies this date as February 7, 2017. However, the record establishes that his appointment was on January 30, 2017. (Medical Records 10, ECF No. 26–2.) The Medical Records are located at ECF Nos. 26–2 through 26–3. The Court employs the "MR" page number which is the pagination assigned to the Medical Records presumably by the institution. The Court omits the initial zeros from the pagination when referring to the Medical Records.

7

and was advised that he should attend class. (*Id.*) The April 4, 2017 appointment was the first time that Defendant Levin was made aware of the fact that Sparks had not received the Naprosyn. (*Id.*)[8] Defendant Levin again ordered Naprosyn for thirty days for Sparks's chronic arthritis. (*Id.*) Sparks began receiving Naprosyn on April 5, 2017. (Medical Records 110, ECF No. 26–3.)

On May 10, 2017, Defendant Levin saw Sparks for diabetic foot care. (Levin Decl. ¶ 15.) At that time, Sparks did not complain of pain or request a refill of Naprosyn. (*Id.*)

During sick call on June 13, 2017, Sparks complained of neck, back, and chest pain and was referred to Defendant Levin for evaluation. (*Id.*) On June 16, 2017, Defendant Levin examined Sparks, noted that he had degenerative disc disease of the spine, and prescribed him indomethacin, a non-steroidal anti-inflammatory, for his neck, back, and chest pain, twice a day for sixty days. (*Id.*)

Defendant Levin explains that he continues to follow Sparks for his diabetes and degenerative arthritis. (*Id.* ¶ 16.) Sparks has not recently requested anti-inflammatories and is able to ambulate around Haynesville with the assistance of a cane. (*Id.*) Defendant Levin at no time denied Sparks pain medicine, and he reordered the medicine as soon as Sparks reported to him that he had not received it. (*Id.* ¶ 17.) When Sparks presented with further pain, Defendant Levin ordered him a sixty-day supply of the anti-inflammatory, Indomethacin. (*Id.*)

---

[8] In his sworn Complaint, Sparks states: "Plaintiff has explained that the pain is and was getting worse, but Defendant has not and will not order the right pain medication." (Compl. 4.) Beyond this vague and conclusory assertion, Sparks does not indicate that he actually informed Defendant Levin that he had not received Naprosyn prior to April 4, 2017. *See United States v. Roane*, 378 F.3d 382, 400-01 (4th Cir. 2004) (internal quotation marks omitted) (citations omitted) (explaining that "[a]iry generalities, conclusory assertions and hearsay statements [do] not suffice to stave off summary judgment").

8

## IV. ANALYSIS

In order to survive summary judgment for a claim under 42 U.S.C. § 1983, a plaintiff must "affirmatively show[] that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). To establish an Eighth Amendment violation, Sparks must demonstrate that Defendant Levin acted with deliberate indifference to his serious medical needs. *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). A medical need is "serious" if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). Thus, to survive a motion for summary judgment under the deliberate indifference standard, a plaintiff "must show that the

9

official in question subjectively recognized a substantial risk of harm. . . . [and] that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)).

In evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim. *See Wright*, 766 F.2d at 849 (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).

In Claim One, Sparks alleges that Defendant Levin was deliberately indifferent to Sparks's pain by failing to provide Sparks with the pain medication, Naprosyn, prescribed by the orthopedic specialist. As discussed below, Sparks fails to establish that Defendant Levin actually knew of and disregarded a serious risk of harm to Sparks.

The record establishes that Sparks received a great deal of medical care from Defendant Levin to address Sparks's various ongoing complaints of pain. Defendant Levin referred Sparks to an orthopedic specialist and a neurosurgeon to address Sparks's pain. (Levin Decl. ¶¶ 5, 8.) While Sparks was awaiting his appointment with the orthopedist, Defendant Levin worked with Sparks to find ways to alleviate his many sources of pain. (*See, e.g., id.* ¶¶ 7–10.) Sparks saw the orthopedic specialist for his complaints of pain on January 30, 2017 and the orthopedic specialist prescribed Naprosyn and physical therapy. (*Id.* ¶ 11.) The next day, Defendant Levin had a follow-up appointment with Sparks, and after that appointment, Defendant Levin ordered Naprosyn and physical therapy for Sparks as prescribed by the orthopedist. (*Id.* ¶¶ 11–12.) Sparks participated in physical therapy from February 20, 2017 until March 16, 2017. (*Id.* ¶ 13.)

The record conclusively demonstrates that Defendant Levin had no appointments with Sparks from January 31, 2017 until April 4, 2017. (*See id.* ¶¶ 12–14; Medical Records 8–10, ECF No. 26–2.) Although Sparks argues that he did not receive Naprosyn as ordered during this time frame, the record establishes that Defendant Levin had no knowledge that Sparks had not received this medicine until Sparks told him on April 4, 2017. (Levin Decl. ¶ 14.) However, by that time, Sparks had already filed the instant § 1983 Complaint alleging he had not received Naprosyn. (Compl. 5.) When Defendant Levin first learned, on April 4, 2017, that Sparks had not received Naprosyn, he immediately submitted a second prescription for Sparks for a thirty-day supply of the drug. (Levin Decl. ¶ 14.) The record demonstrates that Sparks began receiving Naprosyn on April 5, 2017. (Medical Records 110, ECF No. 26–3.)

Overall, the uncontroverted evidence establishes that Defendant Levin was not deliberately indifferent to Sparks's pain by failing to provide Sparks's with Naprosyn. At the time Sparks initiated this civil action, Defendant Levin was unaware of the fact that Sparks had not received the Naprosyn that he had ordered. Sparks fails to suggest what more Defendant Levin should have done to ensure that Sparks had the Naprosyn when he was unaware of the fact that Sparks had not yet received it. In sum, Sparks fails to establish that Defendant Levin subjectively recognized a serious risk of harm to Sparks and chose to ignore that risk. *Farmer*, 511 U.S. at 837. Accordingly, Sparks's claim against Defendant Levin will be DISMISSED.

## V. CONCLUSION

For the foregoing reasons, Defendant Levin's Motion for Summary Judgment (ECF No. 25) will be GRANTED. Claim One and the action will be DISMISSED.

An appropriate Order will accompany this Memorandum Opinion.

/s/
M. Hannah Lauck
United States District Judge

Date: MAY 3 1 2018
Richmond, Virginia